# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELLY CONARD,** | : | **Civil No. 1:22-CV-1121** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** | : | |
| **PENNSYLVANIA STATE POLICE,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.   Introduction

In life and in litigation, there ultimately comes a time to let go and a time to move on. So it is here. The plaintiff, Kelly Conard, retired from the Pennsylvania State Police in 2002, more than twenty years ago. In 2006 and in 2015, Conard twice sued the State Police alleging that they had, *inter alia*, retaliated against her based upon her prior complaints and litigation against that state agency. Conard's 2015 lawsuit made precisely the same claim advanced in the instant case; namely, Conard alleged that the State Police retaliated against her by providing her new employers with negative job references. Both of these prior lawsuits were dismissed and these dismissals have been affirmed by the Court of Appeals. Undeterred by this past history of futility, Conard, who is proceeding *pro se,* now brings this third retaliation

1

claim against the State Police, a claim that she pursues some two decades after her retirement, sixteen years after she filed her first unsuccessful retaliation lawsuit, seven years after Conard lodged her second failed retaliation claim, and some three years after the Court of Appeals affirmed the dismissal of the last of these prior lawsuits.

As discussed below, we find that this complaint shares the fate of its predecessors over the past two decades in that it fails to state a claim upon which relief may be granted.

This case comes before us for consideration of a motion to dismiss the plaintiff's amended complaint filed by the defendant, the Pennsylvania State Police ("PSP"). (Doc. 19). Kelly Conard, a former employee of PSP who retired in 2002, filed the instant lawsuit alleging that her former employer unlawfully retaliated against her because she filed prior lawsuits against PSP. (Doc. 1, 18). Indeed,  as we have noted, Conard filed lawsuits against PSP in 2006 and 2015, alleging claims of discrimination and retaliation. These lawsuits were dismissed, and the dismissals were affirmed by the Court of Appeals. See Conard v. Pennsylvania State Police, 360 F. App'x 337, 338 (3d Cir. 2010); Conard v. Pennsylvania State Police, No. 20-3644, 2022 WL 58543, at *1 (3d Cir. Jan. 6, 2022). Conard now brings this third lawsuit alleging retaliation by PSP under Title VII of the Civil Rights Act, asserting that she has since been given negative references by PSP employees because she

2

filed her prior lawsuits, and these negative references have prevented her from gaining employment in 2021 and 2022. We dismissed Conard's initial complaint, finding that the complaint was devoid of factual allegations supporting her retaliation claim, but allowed Conard an opportunity to file an amended complaint. (Doc. 17). Conard filed her amended complaint on November 16, 2022, which is now the operative pleading in this case. (Doc. 18).

Conard's amended complaint fares no better than her original complaint, or any of her prior lawsuits. On this score, Conard alleges in a vague manner that she was denied employment in the summer of 2021 and some unspecified time in 2022 based on false information provided by PSP to two prospective employers. (Doc. 18, at 2). She additionally asserts that an employment verification was conducted on November 10, 2022, just days prior to the filing of the amended complaint, in which the employment verifier was told that PSP had no record of Conard's employment. (Id.) Conard does not allege, however, what false information was provided to these prospective employers by PSP, who may have provided this information, or how it was, in any way, related to her prior lawsuits. Indeed, while Conard attaches letters from the prospective employers who failed to hire her in 2021 and 2022 based on negative references provided to them by PSP, these letters do not shed any light on whether the alleged negative references related to Conard's prior litigation against PSP. (Doc. 18-1, at 2-3). On the contrary, these letters appear to indicate that the

prospective employers learned of Conard's prior lawsuits, not through references provided by PSP, but through Ms. Conard herself. (Id.)

Thus, PSP has now filed a motion to dismiss the amended complaint. (Doc. 19). In its motion, the defendant asserts that Conard failed to properly serve PSP in accordance with Rule 4 of the Federal Rules of Civil Procedure. PSP further argues that Conard failed to exhaust her Title VII claim as it relates to the employment verification performed in November of 2022, and further, that her retaliation claims fail as a matter of law. After consideration, we agree with the defendants that this amended complaint fails to state a plausible retaliation claim. Accordingly, we will grant the defendant's motion.

## II.   <u>Discussion</u>

### A.   <u>Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell</u>

4

> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our
> opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.
> 2008)], and culminating recently with the Supreme Court's decision in
> Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than
> the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u>, at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u>, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The

District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

7

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover,

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading, may be

considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.

2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002)

(holding that "[a]lthough a district court may not consider matters extraneous to the

pleadings, a document integral to or explicitly relied upon in the complaint may be

considered without converting the motion to dismiss in one for summary

judgment"). However, the court may not rely on other parts of the record in

determining a motion to dismiss, or when determining whether a proposed amended

complaint is futile because it fails to state a claim upon which relief may be granted.

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B.**     **The Defendant's Motion to Dismiss will be Granted.**

As we have noted, Conard has asserted claims against PSP under Title VII of the Civil Rights Act, alleging that PSP retaliated against her for filing lawsuits. However, as the defendant points out in its motion, Conard's amended complaint suffers from the same deficiencies as her initial complaint, in that she fails to plead factual allegations to support this retaliation claim. Moreover, with respect to Conard's claim arising out of the November 2022 verification check, we find that this claim has not been properly exhausted.[1]  Accordingly, we will grant the defendant's motion, and the plaintiff's amended complaint will be dismissed with prejudice.

**1.**  **Conard's Claim Regarding the November 2022 Employment Verification is Unexhausted.**

Title VII creates a legal framework for the resolution of work-related discrimination claims which first provides for administrative relief in these cases. In this setting, where Congress has provided administrative agency relief for private parties:

> It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief. McKart v. United States, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969) .... [T]he purposes of the exhaustion requirement are to promote administrative efficiency, "respect[ ] executive autonomy by allowing an agency the opportunity to correct its own

---

[1] Because we find that Conard's claims fail on the merits, we decline to address the defendant's arguments concerning proper service under Rule 4.

> errors," provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record. Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986).

Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997).

Thus, for persons like Conard, who turn to Title VII to pursue employment discrimination claims, there is a necessary prerequisite to filing a lawsuit in federal court:

> A plaintiff bringing an employment discrimination claim under Title VII must comply with the procedural requirements set forth in 42 U.S.C. § 2000e-5. Before filing a lawsuit, a plaintiff must exhaust her administrative remedies by filing a timely discrimination charge with the EEOC. Id. §§ 2000e-5(b), (e)(1), (f)(1). The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action. Burgh v. Borough Council, 251 F.3d 465, 470 (3d Cir. 2001). The ensuing suit is limited to claims that are within the scope of the initial administrative charge. Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Id. After a charge is filed, "the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination....' " Hicks v. ABT Assoc., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)); see also Antol, 82 F.3d at 1295; Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984).

Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 413-14 (3d Cir. 2010). Generally, "this [exhaustion] requirement is strictly construed and the failure to pursue the appropriate administrative remedies will bar judicial review." Elberson v. Pennsylvania, 396 F. App'x 819, 821-22 (3d Cir. 2010).

Here, with respect to Conard's claim that PSP retaliated against her by informing the employment verifier that it had no record of her employment with PSP, it is undisputed that Conard did not file a charge with the EEOC. (Doc. 21, at 6). Rather, Conard contends that she contacted the EEOC and that someone from the EEOC advised her to include this alleged retaliatory action in her amended complaint with this court, rather than filing a charge with that agency. (Id.) However, Conard provides us with no supporting documentation regarding this failure to file a charge with the EEOC, which as we have explained is a prerequisite to filing a lawsuit in federal court. Accordingly, we cannot conclude on the basis of Conard's vague assertion that an unidentified person at the EEOC told her not to file a charge that she is excused from this strictly construed exhaustion requirement. Thus, we find that this claim is unexhausted.

### 2.  <u>Conard's Retaliation Claim Fails as a Matter of Law.</u>

In any event, we further conclude that, even if properly exhausted, Conard's retaliation claim fails as a matter of law. On this score, as we have noted, Conard asserts that PSP provided prospective employers with false information and negative references because she had filed lawsuits against PSP, and that these negative references precluded her from obtaining employment in 2021 and 2022.

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) that she engaged in protected activity; (2) that she suffered an adverse

employment action; and (3) there was a causal connection between the protected activity and the adverse action. <u>Carvalho-Grevious v. Delaware State Univ.</u>, 851 F.3d 249, 257 (3d Cir. 2017). Ultimately, a plaintiff bringing a Title VII retaliation claim must be able to show that her participation in protected activity was the but-for cause of any alleged adverse employment action that she suffered. <u>Univ. of Tex. Southwestern Med. Ctr. v. Nassar</u>, 570 U.S. 338 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); <u>see also</u> <u>Grevious</u>, 851 F.3d at 257 (noting that a plaintiff alleging Title VII retaliation "has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination under Title VII"). "The ultimate question in any retaliation case is an intent to retaliate vel non." <u>Jensen v. Potter</u>, 435 F.3d 444, 449 n.2 (3d Cir. 2006).

The third and final element of a retaliation claim—causation—is frequently the most hotly contested issue in these cases. This element typically can be pleaded and proven in one of two ways. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism couple with timing to establish a causal link. <u>See</u> <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503-04 (3d Cir. 1997); <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920-21 (3d Cir. 1997). In

> the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 281 (3d Cir. 2000).

<u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007).

On this score "[t]he mere fact that adverse employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1302 (3d Cir. 1997), <u>abrogated on other grounds by</u> <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006). However, the Third Circuit has stated that if the timing of the allegedly retaliatory action is " 'unusually suggestive' of retaliatory motive" a causal link may be inferred. <u>Krouse</u>, 126 F.3d at 503 (citing <u>Robinson</u>, 120 F.3d at 1302). In some cases, the appeals court has found a period of two days demonstrated a causal link, <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989), but has found that a period of two months was not. <u>See</u> <u>Williams</u>, 380 F.3d at 760. Further, we are unaware of any principle based upon either case law or common sense which would suggest that a temporal gulf between the plaintiff's activities and some alleged retaliation that is measured in years is unusually suggestive and would support a retaliation claim.

In the instant case, we find that the plaintiff has failed to meet her burden of establishing a *prima facie* case of retaliation. While it is undisputed that Conard engaged in protected activity when she filed her prior lawsuits in 2006 and 2015,

Conard has not pleaded any facts from which we could infer that the alleged negative references given by unspecified PSP employees were given because she engaged in protected activity. In fact, the amended complaint is completely devoid of any well pleaded facts that would suggest any negative references provided by PSP to prospective employers were in any way related to Conard's prior lawsuits. This was precisely the sort of failure of pleading and proof which led to the dismissal of Conard's 2015 lawsuit. Indeed, as we have explained, while Conard attaches letters from the prospective employers who failed to hire her in 2021 and 2022 based on negative references provided to them by PSP, these letters do not shed any light on whether the alleged negative references related to Conard's prior litigation against PSP. (Doc. 18-1, at 2-3). Rather, these letters appear to indicate that the prospective employers learned of Conard's prior lawsuits, not through references provided by PSP, but through Ms. Conard herself. (Id.) Moreover, it is entirely undisputed that years had passed between these prior unsuccessful lawsuits and the events which form the gravamen of this latest retaliation claim.

More fundamentally, however, Conard's renewed allegations against PSP fail for the same reason as her original complaint was dismissed—namely, that Conard has failed to allege specifics as to the time and content of the alleged retaliatory events, as well as failing to identify any culpable retaliatory actors. Indeed, Conard vaguely asserts that unidentified employees of PSP gave her negative employment

references in the summer of 2021 and at some unidentified time in 2022. However, neither the complaint, nor the letters from the employers who chose not to hire Conard, identify when these events actually took place or who at PSP allegedly gave Conard a negative reference. Without more specific factual allegations, the defendant is once again left "having to guess what of the many things discussed constituted [a cause of action]." Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011).

Further, Conard has not set forth factual allegations that support an inference that any negative reference given by PSP was causally related to her protected activity. Conard filed lawsuits against PSP in 2006 and 2015, some 15 and 6 years prior to the retaliatory activity alleged to have occurred in 2021 and 2022 in the instant amended complaint, respectively. Thus, the temporal proximity between the protected activity and the alleged retaliatory action is far from unduly suggestive. Moreover, Conard has not asserted well-pleaded facts which would support an inference of a pattern of antagonism spanning this period of almost two decades. Rather, she simply refers us back to her 2006 and 2015 cases against PSP, both of which resulted in judgment in favor of PSP, and she urges us to infer a retaliatory motive based on her complaints in those cases. However, we cannot conclude that these vague references to cases that have been dismissed in favor of the defendant are sufficient to allow us to infer a causal connection here. Quite the contrary, it is

implausible to suggest that the State Police would harbor some decades-long retaliatory animus against Conard based upon this dated, and wholly unsuccessful, prior litigation. Accordingly, we find that these retaliation claims fail as a matter of law.

Finally, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In fact, we afforded Conard an opportunity to amend her complaint but to no avail. Therefore, having found that Conard's amended complaint continues to suffer from the same fatal flaws as the initial complaint, we find that granting further leave to amend would be futile. Accordingly, we will grant the defendant's motion, and the plaintiff's complaint will be dismissed with prejudice.

## III.    **Conclusion**

For the foregoing reasons, the defendants' motion to dismiss (Doc. 19) will be GRANTED, and the plaintiff's amended complaint will be dismissed with prejudice.

An appropriate order follows.

Submitted this 17th day of March 2023.


*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge