IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELLY CONARD,** | : | Civil No. 1:22-CV-1121 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA STATE POLICE,** | : : : | |
| | : | |
| **Defendant.** | : | |

# MEMORANDUM OPINION

## I.  Introduction

This case comes before us on a second motion to reconsider filed by the plaintiff (Doc. 29), which asks us to vacate our prior ruling granting the defendant's motion to dismiss and dismissing the plaintiff's claims with prejudice. (Doc. 22). The instant motion represents the latest step in a decades long legal saga. The plaintiff, Kelly Conard, brought this suit against the Pennsylvania State Police, her former employer, alleging that PSP retaliated against her for filing two prior lawsuits—one in 2006 and one in 2015—by giving her negative employment references sometime in 2021 and 2022. The prior lawsuits brought by Conard

1

alleged discrimination and retaliation by PSP, were ultimately dismissed by this court, and the Third Circuit Court of Appeals affirmed the dismissals. See Conard v. Pennsylvania State Police, 360 F. App'x 337, 338 (3d Cir. 2010); Conard v. Pennsylvania State Police, No. 20-3644, 2022 WL 58543, at *1 (3d Cir. Jan. 6, 2022).

Notwithstanding this prior history, Ms. Conard reprised her claims, once again, in this lawsuit. The defendant then filed a motion to dismiss the instant case, and we granted this motion without prejudice to Conard filing an amended complaint. (Doc. 17). In response, Conard filed an amended complaint, after which the defendant renewed its motion to dismiss. Upon consideration, we granted this motion, dismissing the plaintiff's claims in her amended complaint with prejudice. (Doc. 22).

On this score, we concluded that her retaliation claim failed as a matter of law because Conard had not pleaded facts showing that any alleged retaliatory conduct was causally connected to her prior lawsuits filed some 15 and 6 years, respectively, before the alleged conduct of the defendant. Thus, we dismissed Conard's amended complaint with prejudice, having afforded her a prior opportunity to amend her

complaint and finding that her amended complaint suffered from the same flaws as the initial complaint.

Conard has now filed a second motion urging us to reconsider our ruling dismissing her complaint with prejudice. (Doc. 29). Curiously, beyond providing us with a belated right to sue letter from the EEOC and a reference report which seemingly indicates that the state police HR office was unable to confirm her prior employment, Conard does not argue that there has been an intervening change in the law, that new evidence exists that needs to be considered, or that our decision contained a clear error of law. Rather, Conard appears to simply assert, that PSP continues to engage in retaliatory conduct against her.

After consideration, and given the exacting standards required for a motion to reconsider, this motion will be denied.

## II. <u>Discussion</u>

The legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985). Typically, such a motion should only be granted in three, narrowly defined circumstances: where there is either "(1) [an]

intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice." Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Thus, it is well settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and

disposed of by the court. Dodge, 796 F.Supp. at 830. Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

In the instant case, the plaintiff does not argue that there has been an intervening change in the law which compels a different outcome here. While she submits a belated EEOC right to sue letter, Conard's motion to reconsider still fails because her complaint continues to founder on its merits. As we previously explained in detail to the plaintiff on this score:

> To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017). Ultimately, a plaintiff bringing a Title VII retaliation claim must be able to show that her participation in protected activity was the but-for cause of any alleged adverse employment action that she suffered. Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 570 U.S. 338 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); see also Grevious, 851 F.3d at 257 (noting that a plaintiff alleging Title VII retaliation "has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination

5

under Title VII"). "The ultimate question in any retaliation case is an intent to retaliate vel non." Jensen v. Potter, 435 F.3d 444, 449 n.2 (3d Cir. 2006).

The third and final element of a retaliation claim—causation—is frequently the most hotly contested issue in these cases. This element typically can be pleaded and proven in one of two ways. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism couple with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

On this score "[t]he mere fact that adverse employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006). However, the Third Circuit has stated that if the timing of the allegedly retaliatory action is " 'unusually suggestive' of retaliatory motive" a causal link may be inferred. Krouse, 126 F.3d at 503 (citing Robinson, 120 F.3d at 1302). In some cases, the appeals court has found a period of two days demonstrated a causal link, Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), but has found that a period of two months was

not. See Williams, 380 F.3d at 760. Further, we are unaware of any principle based upon either case law or common sense which would suggest that a temporal gulf between the plaintiff's activities and some alleged retaliation that is measured in years is unusually suggestive and would support a retaliation claim.

In the instant case, we find that the plaintiff has failed to meet her burden of establishing a *prima facie* case of retaliation. While it is undisputed that Conard engaged in protected activity when she filed her prior lawsuits in 2006 and 2015, Conard has not pleaded any facts from which we could infer that the alleged negative references given by unspecified PSP employees were given because she engaged in protected activity. In fact, the amended complaint is completely devoid of any well pleaded facts that would suggest any negative references provided by PSP to prospective employers were in any way related to Conard's prior lawsuits. This was precisely the sort of failure of pleading and proof which led to the dismissal of Conard's 2015 lawsuit. Indeed, as we have explained, while Conard attaches letters from the prospective employers who failed to hire her in 2021 and 2022 based on negative references provided to them by PSP, these letters do not shed any light on whether the alleged negative references related to Conard's prior litigation against PSP. (Doc. 18-1, at 2-3).

Rather, these letters appear to indicate that the prospective employers learned of Conard's prior lawsuits, not through references provided by PSP, but through Ms. Conard herself. (Id.) Moreover, it is entirely undisputed that years had passed between these prior unsuccessful lawsuits and the events which form the gravamen of this latest retaliation claim.

More fundamentally, however, Conard's renewed allegations against PSP fail for the same reason as her original complaint was dismissed— namely, that Conard has failed to allege specifics as to the time and content of the alleged retaliatory events, as well as failing to identify any culpable retaliatory actors. Indeed, Conard vaguely asserts that unidentified employees of PSP gave her negative employment

> references in the summer of 2021 and at some unidentified time in 2022. However, neither the complaint, nor the letters from the employers who chose not to hire Conard, identify when these events actually took place or who at PSP allegedly gave Conard a negative reference. Without more specific factual allegations, the defendant is once again left "having to guess what of the many things discussed constituted [a cause of action]." Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011).
>
> Further, Conard has not set forth factual allegations that support an inference that any negative reference given by PSP was causally related to her protected activity. Conard filed lawsuits against PSP in 2006 and 2015, some 15 and 6 years prior to the retaliatory activity alleged to have occurred in 2021 and 2022 in the instant amended complaint, respectively. Thus, the temporal proximity between the protected activity and the alleged retaliatory action is far from unduly suggestive. Moreover, Conard has not asserted well-pleaded facts which would support an inference of a pattern of antagonism spanning this period of almost two decades. Rather, she simply refers us back to her 2006 and 2015 cases against PSP, both of which resulted in judgment in favor of PSP, and she urges us to infer a retaliatory motive based on her complaints in those cases. However, we cannot conclude that these vague references to cases that have been dismissed in favor of the defendant are sufficient to allow us to infer a causal connection here. Quite the contrary, it is implausible to suggest that the State Police would harbor some decades-long retaliatory animus against Conard based upon this dated, and wholly unsuccessful, prior litigation. Accordingly, we find that these retaliation claims fail as a matter of law.

Conard v. Pennsylvania State Police, No. 1:22-CV-1121, 2023 WL 2563225, at *5–6 (M.D. Pa. Mar. 17, 2023), reconsideration denied sub nom. Conard v. Pennsylvania, No. 1:22-CV-1121, 2023 WL 3161467 (M.D. Pa. Apr. 28, 2023).

As to this question regarding the merits of what we have found to be her stale, temporally remote, and meritless retaliation claims, Conard's latest motion to reconsider simply attaches a form which purports to indicate that a November 2022 effort to confirm her past employment through the state police HR office and automated systems was unsuccessful. We find that this is simply too slender a thread upon which to rest this retaliation claim. This alleged failure to confirm Conard's past employment occurred many years after Conard's prior lawsuits drew to a close. Therefore, the temporal gulf between Conard's prior litigation and this alleged retaliation now spans many years or decades. Further, this November 2022 incident appears to have involved an HR functionary who was otherwise unrelated to her prior litigation, a fact which further undermines any remote inference of retaliatory animus. In addition, this episode apparently entails nothing more than an alleged inability by an HR clerk to confirm past employment, something which falls far below the type of adverse action necessary to sustain a workplace retaliation claim. Quite the contrary, it has been held that an employer's limited response to a mock employment verification request does not constitute actionable workplace retaliation under federal civil rights statute. See Hollowell v. Int'l Mill Serv., Inc., 66 F. App'x 631, 635 (7th Cir. 2003) (collecting cases).

As we have previously explained, a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F.Supp. at 830. Moreover, a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Id. In the instant case, while the plaintiff disagrees with our decision and seeks to reargue her position with respect to her claims, she has not demonstrated any material new evidence, intervening change in the law, or clear error resulting in a manifest injustice which would justify reconsideration of our decision in this case. While we acknowledge the plaintiff's subjective sense that she has been wronged, that subjective impression simply is not a substitute for well-pleaded facts which state a plausible claim for relief. We also remind Ms. Conard of the observation which we previously shared with her: "In life and in litigation, there ultimately comes a time to let go and a time to move on. So it is here." Conard, 2023 WL 2563225, at *1.

While we empathize with Ms. Conard's subjective sense of aggrievement, that subjective impression, standing alone, does not entitle her to reopen this case. Accordingly, our prior observation regarding the need for the plaintiff to move on in

life and litigation still remains true. Therefore, the second motion to reconsider filed by Ms. Conard will be denied.

## IV. Conclusion

Accordingly, for the foregoing reasons, the plaintiff's motion for reconsideration (Doc. 29) will be DENIED.

An appropriate order follows.

*S/Martin C. Carlson*  
Martin C. Carlson  
United States Magistrate Judge

DATED: July 19, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELLY CONARD,** | : | Civil No. 1:22-CV-1121 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA STATE POLICE,** | : | |
| | : | |
| **Defendant.** | : | |

# **ORDER**

AND NOW, this 19th day of July 2023, in accordance with the accompanying Memorandum Opinion, IT IS HEREBY ORDERED THAT the plaintiff's second motion for reconsideration (Doc. 29) is DENIED.

<u>S/Martin C. Carlson</u><br>
Martin C. Carlson<br>
United States Magistrate Judge